**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ROY COCKRUM, SCOTT COMER, and ERIC SCHOENBERG, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:17-cv-1370-ESH |
| DONALD J. TRUMP FOR PRESIDENT, INC., and ROGER STONE, | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL
DISCOVERY AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ............................................................................................................1

ARGUMENT....................................................................................................................2

     I.     The Standard Permitting Discovery Regarding Personal Jurisdiction in this
            Circuit is Liberal ...................................................................................................2

     II.    Plaintiffs Should Be Granted Jurisdictional Discovery Regarding Defendants'
            Contacts with the District.....................................................................................4

           A.     The Standards Governing Whether Defendants' Contacts with the
                   District of Columbia Give Rise to Personal Jurisdiction...........................4

           B.     Plaintiffs' Allegations Regarding Defendants' Contacts State a *Prima
                   Facie* Case of Personal Jurisdiction or at a Minimum Warrant
                   Jurisdictional Discovery ..........................................................................9

     III.   Plaintiffs Should Be Granted Jurisdictional Discovery Regarding Co-
            Conspirators' Contacts with the District.............................................................13

     IV.   Plaintiffs' Proposed Discovery...........................................................................16

CONCLUSION...............................................................................................................18

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Atlantigas Corp. v. Nisource, Inc.*,

    290 F.Supp.2d 34 (D.D.C. 2003)..........................................................................................3

*Banneker Ventures, LLC v. Graham*,

    798 F.3d 1119 (D.C. Cir. 2015)..........................................................................................11

*\*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,

    137 S. Ct. 1773 (2017) .............................................................................................. 7, 8, 14

*Cmty. Fin. Services Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*,

    132 F. Supp. 3d 98 (D.D.C. 2015)......................................................................................3

*Crane v. Carr*,

    814 F.2d 758 (D.C. Cir. 1987)......................................................................................3, 13

*Diversified Mgmt. Solutions v. Control Sys. Research*,

    No. 15-cv-81062, 2016 WL 4256916 (S.D. Fla. May 13, 2016)...........................................6

*\*Dooley v. United Techs. Corp*,

    786 F. Supp. 65 (D.D.C. 1992)............................................................................ 6, 7, 11, 12

*\*Edmond v. U.S. Postal Service General Counsel*,

    949 F.2d 415 (D.C. Cir. 1991)................................................................................ 2, 13, 14

*Fadl v. Central Bank of Jordan*,

    75 F.3d 668 (D.C. Cir. 1996)...............................................................................................2

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,

    529 F.3d 1087 (D.C. Cir. 2008)............................................................................ 3, 6, 13, 14

*Gelboim v. Bank of Am. Corp.*,

    823 F.3d 759 (2d Cir. 2016)...............................................................................................11

*GTE New Media Services Inc. v. BellSouth Corp.*,

    199 F.3d 1343 (D.C. Cir. 2000)...........................................................................................3

*In re Baan Co. Secs. Litig.*,

245 F. Supp. 2d 117 (D.D.C. 2003) ......................................................................2

*In re New Motor Vehicles Canadian Export*,

307 F. Supp. 2d 145 (D. Me. 2004) ......................................................................9

*In re Sumitomo Copper Litig.*,

120 F. Supp. 2d 328 (S.D.N.Y. 2000) ..................................................................6

*Jacobsen v. Oliver*,

201 F. Supp. 2d 93 (D.D.C. 2002) ........................................................................5

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,

115 F.3d 1020 (D.C. Cir. 1997) ..........................................................................13

*Kroger v. Legalbill.com LLC*,

No. 04-cv-2189, 2005 WL 4908968 (D.D.C. Apr. 7, 2005) ............................6, 8

*Lans v. Adduci Mastriani & Schaumberg LLP*,

786 F. Supp. 2d 240 (D.D.C. 2011) ......................................................................8

*Myers v. Casino Queen, Inc.*,

689 F.3d 904 (8th Cir. 2012) ................................................................................7

*Naartex Consulting Corp. v. Watt*,

722 F.2d 779 (D.C. Cir. 1983) ........................................................................3, 13

*\*Oxbow Carbon & Minerals LLC v. Union Pacific R.R. Co.*,

81 F. Supp. 3d 1 (D.D.C. 2015) ..........................................................................11

*Plesha v. Ferguson*,

760 F. Supp. 2d 90 (D.D.C. 2011) ........................................................................3

*Richter v. Analex Corp.*,

940 F. Supp. 353 (D.D.C. 1996) ...........................................................................8

*Rilley v. MoneyMutual, LLC*,

884 N.W.2d 321 (Minn. 2016) ..............................................................................8

*Samantar v. Yousuf,*

    560 U.S. 305 (2010) ........................................................................................................2

*Second Amendment Found. v. U.S. Conf. of Mayors,*

    274 F.3d 521 (D.C. Cir. 2001) ....................................................................................5, 13

*Sharp Corp. v. Hisense USA Corp.,*

    292 F. Supp. 3d 157 (D.D.C. 2017) ................................................................................8

*\*Shoppers Food Warehouse v. Moreno,*

    746 A.2d 320 (D.C. 2000) ..........................................................................................5, 7

*Ticketmaster-New York, Inc. v. Alioto,*

    26 F.3d 201 (1st Cir. 1994) .............................................................................................7

*TV Azteca v. Ruiz,*

    490 S.W.3d 29 (Tex. 2016) .............................................................................................8

*U.S. v. Menutti,*

    679 F.2d 1032 (2d Cir. 1982) .......................................................................................12

*\*Walden v. Fiore,*

    134 S. Ct. 1115 (2014) .......................................................................................8, 12, 14

**Statutory Authorities**

42 U.S.C. §1985(3) ..............................................................................................................5

D.C. Code §13-423(a)(1) .....................................................................................................5

D.C. Code §13-423(a)(4) .....................................................................................................5

**Rules and Regulations**

Fed. R. Civ. P. 26(a) ..........................................................................................................16

Fed. R. Civ. P. 30 ...............................................................................................................17

Fed. R. Civ. P. 33 ...............................................................................................................16

Fed. R. Civ. P. 34 ...............................................................................................................17

**INTRODUCTION**

Plaintiffs move for leave to take limited jurisdictional discovery to further establish Defendants' contacts with the District of Columbia related to Plaintiffs' claims, both through their own direct actions and the actions of their co-conspirators within the District.  Under the standards governing personal jurisdiction discussed at the recent hearing on Defendants' motions to dismiss and in the parties' briefs, Plaintiffs contend that they have sufficiently pleaded a *prima facie* case for personal jurisdiction because their claims arise from the Defendants' own contacts with the District, as well as the contacts of their co-conspirators.  However, should the Court disagree with Plaintiffs and be inclined to conclude that Plaintiffs have not established jurisdiction on the face of the Amended Complaint, Plaintiffs' allegations are more than sufficient to qualify them for limited jurisdictional discovery prior to ultimate resolution of Defendant's jurisdictional challenge.

Under the D.C. Circuit's governing law, Plaintiffs should be granted leave to take discovery unless Plaintiffs' jurisdictional allegations are so entirely conclusory that discovery would be futile—which they are not—or it is clear that no discovery could shed any light on contacts relevant under the governing legal standards—which is also not the case.  Plaintiffs have more than met the governing standard triggering jurisdictional discovery because they have pleaded facts that if proven true establish: 1) that their claims arise from the existence of a conspiracy between Defendants and other co-conspirators; 2) that multiple acts in furtherance of that conspiracy were committed within the District of Columbia by Defendants and their co-conspirators; and 3) the plausibility of Defendants' and the co-conspirators' additional contacts with the forum.  Plaintiffs therefore make this motion in the alternative to their opposition to the motions to dismiss, because to resolve those motions in Defendants' favor without permitting

jurisdictional discovery would allow "the defendant [to] defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).[1]

## ARGUMENT

### I.    The Standard Permitting Discovery Regarding Personal Jurisdiction in this Circuit is Liberal

When a defendant moves to dismiss for lack of personal jurisdiction, a plaintiff can meet his or her burden with respect to establishing jurisdiction with a *prima facie* showing based on allegations. *Edmond v. U.S. Postal Service General Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991) (addressing *prima facie* burden without discovery or evidentiary hearing). A plaintiff can also, in the alternative, request jurisdictional discovery, after which this Court will resolve the jurisdictional question using a "'factually documented' *prima facie* standard" that "obliges plaintiffs to support their bare allegations, but instructs a court to look favorably upon those assertions once the required proffer is made." *In re Baan Co. Secs. Litig.*, 245 F. Supp. 2d 117, 125 (D.D.C. 2003) (citation omitted).

The D.C. Circuit and this Court generally permit limited jurisdictional discovery before deciding a motion to dismiss for lack of personal jurisdiction. *See, e.g., Edmond*, 949 F.2d at 425 ("[D]iscovery under the Federal Rules of Civil Procedure should be freely permitted, and

---

[1] Pursuant to Local Civil Rule 7(m), the undersigned counsel for Plaintiffs has consulted with Defendants' counsel, who represent that Defendants oppose this motion.

this is no less true when discovery is directed to personal jurisdiction.").[2]  The D.C. Circuit has

held that it is an abuse of discretion for a trial court to deny jurisdictional discovery unless

plaintiffs' allegations are either so conclusory and superficial or legally invalid that discovery

will shed no light at all on relevant contacts with the forum.  *See id.*; *FC Inv. Grp. LC v. IFX

Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) ("[A] request for jurisdictional discovery

cannot be based on mere conjecture or speculation."); *id.* (denying discovery because "no

amount of discovery regarding that one customer's transactions would support general

jurisdiction"); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983).  When

requesting jurisdictional discovery, "a plaintiff must make a detailed showing of what discovery

it wishes to conduct or what results it thinks such discovery would produce." *Atlantigas Corp. v.

Nisource, Inc.*, 290 F.Supp.2d 34, 53 (D.D.C. 2003) (citation omitted).[3]

Under the governing standards, a court has three options when evaluating a pending

motion to dismiss on jurisdictional grounds and a motion made in the alternative for

jurisdictional discovery: 1) deny the motion to dismiss because the plaintiffs, on the face of the

---

[2] *See also GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."); *El–Fadl*, 75 F.3d at 676 (a plaintiff "faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery"); *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987) ("[Plaintiff] has pointed to links [defendant] has with the District, sufficient at least to permit further inquiry regarding personal jurisdiction, so that the statutory and constitutional questions can be resolved on a fuller record."); *Plesha v. Ferguson*, 760 F. Supp. 2d 90, 93 (D.D.C. 2011) ("The Court cannot dismiss a plaintiff's claims against a defendant for lack of personal jurisdiction without affording him an opportunity to develop facts supporting jurisdiction through appropriate discovery.").

[3] Where a court concludes that a complaint's allegations are sufficient to establish a *prima facie* case for personal jurisdiction on their face, it is not required to order further discovery before resolving the jurisdictional challenge and may dismiss any pending discovery motion for discovery as moot.  *E.g.*, *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*, 132 F. Supp. 3d 98, 116 (D.D.C. 2015).

complaint, have made a *prima facie* showing of jurisdiction; 2) withhold judgment on the jurisdictional question and grant discovery because the plaintiffs' allegations are sufficient to trigger further inquiry, resolving the motion to dismiss later under the factually-documented *prima facie* standard; or 3) grant the motion to dismiss without granting discovery, but only if the plaintiffs' allegations are legally insufficient and they have pleaded only conclusory facts and further discovery necessarily would shed no light on jurisdictional issues.  Plaintiffs respectfully submit that the Court should employ the first option, and deny the pending motions to dismiss for lack of personal jurisdiction on the face of the Amended Complaint.  But if the Court is not inclined to do so, Plaintiffs' allegations are more than sufficient to warrant the limited discovery requested in this motion to further establish Defendants' contacts with this forum that gave rise to the Plaintiffs' claims.

Below, Plaintiffs discuss the governing legal standards pertaining to personal jurisdiction based on Plaintiffs' allegations regarding how their claims arise from Defendants' and their co-conspirators' contacts with the District and why, under those standards, Plaintiffs' existing factual allegations demonstrate a good-faith basis for determining that discovery will yield relevant information that will assist the Court in resolving Defendants' jurisdictional challenge.

## II.     Plaintiffs Should Be Granted Jurisdictional Discovery Regarding Defendants' Contacts with the District

### A.     Standards Governing Whether Defendants' Contacts with the District of Columbia Give Rise to Personal Jurisdiction

Under the due process clause and the D.C. long-arm statute, a court in D.C. may exercise jurisdiction over an individual or entity that transacts business in the District, where the

plaintiff's claims "aris[e] from" that transaction.  D.C. Code § 13-423(a)(1).[4]  When a defendant

has engaged in acts in furtherance of a conspiracy in the forum, he is deemed to have transacted

business in the forum for the purposes of Section 13-423(a)(1).  *See Second Amendment Found.*

*v. U.S. Conf. of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001) ("Persons who enter the forum and

engage in conspiratorial acts are deemed to 'transact business' there 'directly.'") (quoting D.C.

Code § 13-423(a)(1)).[5]  And claims that are predicated on conspiracy liability "arise" from the

defendant's transaction of the business of the conspiracy in the District.  That is, where the

underlying tort flows from the conspiracy, other conduct in furtherance of the conspiracy in the

forum can establish jurisdiction under the permissive standard for when claims "arise from"

contacts with the forum.

The "arise from" standard is broad and flexible: a plaintiff's claims "arise from" the

transaction of business in the forum where they bear a "discernible relationship" to the

defendant's contacts with the forum.  *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320,

335 (D.C. 2000); *see also*, *e.g.*, *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 105 (D.D.C. 2002)

("[T]he District of Columbia Court of Appeals interpreted the phrase 'arise from' broadly and

---

[4] Plaintiffs focus on Section 13-423(a)(1) here, but jurisdiction is also proper under Section 13-423(a)(4) for Plaintiffs' claim under 42 U.S.C. §1985(3), as well as Plaintiff Comer's claims in light of the harm to his professional reputation in the District, *see* Pls.' Mem. of Points & Authorities in Opp'n to Defs.' Mots. to Dismiss ("Pls.' Mem.") at 21-22, ECF No. 25, and under a theory of general jurisdiction for all of Plaintiffs' claims, *see id.* at 22-23.  Plaintiffs also focus here on their underlying claims that rest on the conspiracy theory of liability.  But the Court also has jurisdiction over Defendants for the aiding-and-abetting theory of liability for much the same reasons discussed here.

[5] The court in Second Amendment Foundation declined to exercise jurisdiction because the plaintiff had alleged no facts from which the court could infer that the defendants had entered into a conspiracy, and thus had failed to satisfy their prima facie burden.  See 274 F.3d at 524.  The court's decision was not based on the fact that the only basis for jurisdiction was a single meeting in the forum.  Indeed, courts regularly hold that a single in-forum meeting is sufficient for jurisdiction.  *See infra* at p.8.

established a 'flexible' nexus test to determine when claims can be said to 'arise from' contacts with the forum."); *Kroger v. Legalbill.com LLC*, No. 04-cv-2189, 2005 WL 4908968, at *6-*8 (D.D.C. Apr. 7, 2005) (discussing the "arise from" test).

Applying this broad standard, courts in this jurisdiction and elsewhere have held that conduct in furtherance of a conspiracy in a forum is discernably related to underlying substantive claims that flow from that conspiracy to give rise to specific jurisdiction.  *See Dooley v. United Techs. Corp*, 786 F. Supp. 65, 69 (D.D.C. 1992), *abrogated on other grounds by FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008); *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 337 (S.D.N.Y. 2000) ("These business activities are substantially related to Plaintiffs' claims, because they were in furtherance of the alleged conspiracy, which is the basis of Plaintiffs' claims."); *Diversified Mgmt. Solutions v. Control Sys. Research*, No. 15-cv-81062, 2016 WL 4256916, at *14-*15 (S.D. Fla. May 13, 2016) (holding court has personal jurisdiction over out-of-state defendant because plaintiffs alleged facts sufficient to show conspiracy and that co-conspirator "committed acts in Florida in furtherance of the conspiracy," even assuming that the contacts between co-conspirator and defendant do not themselves "rise to the level of a 'tortious act' committed within Florida").  In *Dooley*, the plaintiff alleged a conspiracy in which defendants bribed Saudi officials so that Saudi Arabia would purchase Sikorsky helicopters, and plaintiff alleged he was demoted for refusing to cooperate.  *Dooley*, 786 F. Supp. at 72-73. Rather than looking just at the immediate conduct that caused the plaintiff's demotion, the court found that it could exercise jurisdiction over the defendants based on conduct in the District in furtherance of the broader conspiracy:

> Plaintiff Dooley's complaint certainly can be said to arise from the UTC
> Corporate Defendants' activities in the District of Columbia. It is through UTC
> Defendants' contacts with Saudi Arabian Ambassador Bandar in Washington,
> D.C. that the conspiracy allegedly came to its inception. Through UTC

> Defendants' visits to the District, the conspiracy allegedly came to fruition. And it
> is the defendants' connections to Frank E. Basil, Inc., in Washington, D.C., which
> established allegedly the mechanism for the bribes at the heart of the conspiracy.
> Plaintiff Dooley's alleged refusal to cooperate with this Washington-centered
> conspiracy gave rise to his demotion and thus, this action.

*Id.* at 72-73.

Significantly, under the "arise from" standard, a plaintiff's injury need not be *caused* by a defendant's contacts with the forum. *Shoppers Food Warehouse*, 746 A.2d at 333-35 (discussing and rejecting tests based on proximate causation or but for causation). The D.C. Court of Appeals has emphasized that "if the claim either arises out of *or* relates to the nonresident defendant's business activity, specific jurisdiction may be exercised," *id.* at 332 (emphasis in original). This construction of "arise from" is consistent with the federal due process standard, which likewise allows jurisdiction over claims that arise from or relate to a defendant's contacts with a forum. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) ("[T]he suit must aris[e] out of or relat[e] to the defendant's contacts with the forum."); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) ("[W]e think it significant that the constitutional catchphrase is disjunctive in nature, referring to suits 'aris[ing] out of, *or* relat[ing] to,' in-forum activities. . . . We believe that this added language portends added flexibility and signals a relaxation of the applicable standard. A number of other courts share this belief." (internal citations omitted)); *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912-13 (8th Cir. 2012).

Recent Supreme Court precedent likewise does not impose a causation requirement or some other heightened nexus between a plaintiff's claim and a defendant's contacts with the forum to satisfy due process requirements. The Court's most recent specific jurisdiction cases merely hold that a court lacks personal jurisdiction if the defendant itself lacks any minimum

contacts with the forum (*Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014)), or if there is no

relationship at all between the forum and the plaintiff's claims (*Bristol-Myers,* 137 S. Ct. at

1780).   Neither *Walden* nor *Bristol-Myers* suggests that a tighter nexus between the Defendants'

actual contacts with the forum and the underlying claims is required—a "discernible

relationship" remains sufficient.   *See, e.g.*, *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d

157, 170 (D.D.C. 2017) (applying the "arise from" test after *Walden* and *Bristol-Myers*); *Rilley v.

MoneyMutual, LLC*, 884 N.W.2d 321, 329 (Minn. 2016) ("*Walden* does not disturb numerous,

long-established precedents allowing courts to exercise personal jurisdiction over defendants

based in part on commercial contacts with businesses or residents that are located inside the

forum."); *TV Azteca v. Ruiz*, 490 S.W.3d 29, 52-53 (Tex. 2016) (holding, post-*Walden*, that the

"standard does not require proof that the plaintiff would have no claim 'but for' the contacts, or

that the contacts were a 'proximate cause' of the liability").[6]

Under the "arise from" standard, and consistent with due process, courts have recognized

that even a single significant act related to a claim by a defendant in the forum can create

personal jurisdiction.   *See, e.g.*, *Kroger*, 2005 WL 4908968, at *9 (stating that "the long-arm

statute does not require that the claim arise *solely* from D.C. activities" and that "it is certainly

the case that a 'single event' or a 'single meeting' can suffice" to establish personal jurisdiction);

*Richter v. Analex Corp.*, 940 F. Supp. 353, 360 (D.D.C. 1996) (basing personal jurisdiction on

one meeting in D.C. at which conduct giving rise to the claim might have been discussed); *Lans

v. Adduci Mastriani & Schaumberg LLP*, 786 F. Supp. 2d 240, 277 (D.D.C. 2011) (holding that

---

[6] This case would be more like *Walden* or *Bristol-Myers* had Plaintiffs brought it in a forum where the Campaign had no contact at all or its only contact was to try to win voters, and it had engaged in no conduct related to the conspiracy.  Not so here, where the Campaign and its co-conspirators engaged in specific acts in the forum in furtherance of the conspiracy.

"even if the July 1997 meeting was Delphi's only contact with the District, this contact alone is sufficient to constitute minimum contacts" and citing cases); *In re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145, 152-53 (D. Me. 2004) (finding *prima facie* case of jurisdiction based on a single meeting in the forum in furtherance of the conspiracy).

**B.    Plaintiffs' Allegations Regarding Defendants' Contacts State a *Prima Facie* Case of Personal Jurisdiction or, at a Minimum, Warrant Jurisdictional Discovery**

Under the standards discussed above, Defendants' own contacts with the District in furtherance of the alleged conspiracy are relevant to Plaintiffs' claims and are sufficient—particularly at this early stage of the proceedings—to establish personal jurisdiction over Defendants.  In the alternative, the same allegations, identifying Defendants' specific contacts with the District related to Plaintiffs' claims, are more than sufficient to support Plaintiffs' request for jurisdictional discovery.

Plaintiffs have specifically alleged the conspiracy at issue: that over the course of the spring of 2016, Defendants and their co-conspirators entered into a single conspiracy, pursuant to which Russia agreed that it would help the Trump Campaign, including by releasing thousands of emails stolen from the Democratic National Committee (DNC), which included Plaintiffs' private information, *see* Am. Compl. ¶¶ 13, 139; that Defendants advised their co-conspirators on the specific material to be released and the timing of such release, *see id.* ¶¶ 10-11, 16, 119-120, 161; and that Defendants offered policy concessions to Russia in exchange for their assistance, *see id.* ¶¶ 14-15, 139-159.  Plaintiffs have alleged that they were injured as a direct

and foreseeable result of this conspiracy.  *See id.* ¶¶ 16-22, 61-77, 161, 226-227, 234-235, 244-245.[7]

Plaintiffs have further alleged several specific acts in furtherance of this conspiracy that involved Defendants and occurred in the District, including:

1. Plaintiffs have alleged that Defendants' foreign policy team was based in D.C., was led by someone who lived and worked in D.C., that the team's defining attribute was its inexplicable collaboration with Russia as part of the conspiracy, and that this collaboration was conducted and directed in the District.  *See* Am. Compl. ¶¶ 35-37.

2. Plaintiffs have alleged that then-candidate Trump met with the Campaign's foreign policy team in D.C. on March 31, 2016.  *Id.* ¶ 95.  Plaintiffs also have alleged specific facts suggesting strongly that this March 31 meeting was important to the inception of the conspiracy—specifically, it was attended by George Papadopoulos, who had recently made contact with agents of the Russian regime and had declared himself to be an intermediary for the Kremlin; those contacts were discussed at the meeting; and J.D. Gordon later identified the meeting as the source of the adoption of language favorable to Russia in the Republican Party platform.  *See id.* ¶¶ 95, 149; Statement of the Offense

---

[7] Plaintiffs have alleged that the conspiracy explicitly included dissemination of the emails, and they have provided ample facts to support that allegation.  *See, e.g.*, Am. Compl. ¶¶ 10-11, 13, 16, 97, 101, 119-127, 129-134, 139, 160-165; Statement of the Offense ¶ 14, *United States v. Papadopoulos*, 1:17-cr-182, ECF No. 19 (D.D.C. Oct. 5, 2017) ("Papadopoulos SOO").  But, even if the co-conspirators entered into a more general agreement for Russia to help the Trump Campaign in exchange for policy benefits, and that agreement did not explicitly include dissemination of the emails, Defendants would be liable for that dissemination as an overt act in furtherance of the conspiracy.  See Pls' Mem. at 27 n.10; Pls.' Surreply in Opp'n to Defs' Mot. to Dismiss at 3, ECF No. 50.  And because Plaintiffs' injuries would still flow from the conspiracy, acts in furtherance of the conspiracy in the forum would still bear a "discernible relationship" to Plaintiffs' claims, thus providing the Court with jurisdiction, or at the very least with a specific basis for jurisdictional discovery.

¶ 9, *United States v. Papadopoulos*, 1:17-cr-182, ECF No. 19 (D.D.C. Oct. 5, 2017)

("Papadopoulos SOO"); *see also Dooley*, 786 F. Supp. at 72 (identifying conduct by

which "the conspiracy allegedly came to its inception" as relevant to conduct in the

forum for personal jurisdiction).

3.  Similarly, on April 27, 2016, just one day after Mr. Papadopoulos was offered "dirt" on

    Mr. Trump's opponent in the form of "thousands of emails," Papadopoulos SOO ¶ 14,

    Mr. Trump and other high-ranking Campaign officials met with Russian Ambassador

    Kislyak in D.C.  Am. Compl. ¶ 96.  These meetings were kept secret and wrongfully not

    disclosed as required on official government documents (filed in the District), further

    enhancing the plausibility of the allegation that they were in furtherance of the

    conspiracy.  *Id.* ¶¶ 194-198.

4.  And on July 7, 2016, while in D.C., then-Campaign Chairman Paul Manafort emailed a

    Russian oligarch with close ties to the Kremlin to offer private briefings.  *Id.* ¶ 99.[8]

Plaintiffs have pleaded, and it is at the least plausible—indeed, likely—that all of these

furthered the conspiracy that is the basis for their claims.  Plaintiffs have also pleaded additional

facts supporting the plausibility of additional acts in furtherance of the conspiracy in the

---

[8] During the May 17 hearing, the Court raised the possibility that Mr. Manafort may have been motivated by his own self-interest rather than by his participation in a broader conspiracy.  While that may be a plausible explanation if this allegation were taken in isolation, it becomes far less plausible when viewed in the context of the other contacts between Russian agents and agents of the Trump Campaign.  In any event, it is at least equally plausible that Mr. Manafort's actions were a part of the conspiracy (including because his participation in the conspiracy was in his self-interest).  And at this stage, Plaintiffs need not rule out the possibility of independent action or other plausible (even more plausible) explanations.  *See, e.g.*, *Oxbow Carbon & Minerals LLC v. Union Pacific R.R. Co.*, 81 F. Supp. 3d 1, 13 (D.D.C. 2015) ("Because Oxbow's allegations are plausible, Oxbow need not eliminate the possibility of independent action to survive defendants' motions to dismiss, even if defendants' allegations are also plausible." (internal citations omitted)); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015); *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781 (2d Cir. 2016).

District.[9]   Together, the alleged acts in D.C. by Defendants in furtherance of the conspiracy to work together to harm Mr. Trump's opponent and help the Trump Campaign, which led to the release of the stolen DNC emails, have far more than a "discernible relationship" to Plaintiffs' underlying claims.

But even if the Court disagrees with Plaintiffs about the "arising from" standard and concludes that conduct in furtherance of the conspiracy is only a basis for jurisdiction if it has a closer nexus to the underlying tort, Plaintiffs still should be granted jurisdictional discovery. Plaintiffs have pleaded sufficient facts regarding activity by the Defendant Trump Campaign and its co-conspirators in the District to raise at the least a very serious question as to whether the Campaign discussed, at meetings that took place in the District, the very activities that harmed plaintiffs and constituted the underlying torts and violations of law—namely, publication and dissemination of the stolen emails on WikiLeaks and elsewhere, and using that publication to decrease support for their political opponents.  These allegations—predicated on now-public

---

[9] Plaintiffs have also alleged that the Campaign had a significant D.C. presence and that the bulk of the Campaign's foreign policy activity was conducted from D.C.  See Am. Compl. ¶¶ 35-37, 196.  The hack of the DNC servers in D.C. was also a critical overt act in furtherance of the conspiracy, and thus is also a basis for personal jurisdiction.  See Pls.' Mem. at 20-21; see also infra at Section III.  And in-forum conduct that post-dates the dissemination of the emails—such as Mr. Flynn's conversations with Mr. Kislyak, which were a part of the "payoff" pursuant to the conspiracy, Am. Compl. ¶¶ 152-154; the Campaign's amplification of the leaked emails, id. ¶¶ 168; and acts of concealment, id. ¶¶ 188, 192, 194-198—are sufficiently related to Plaintiffs' claims that they provide a further basis for jurisdiction, particularly given that the specific jurisdiction inquiry turns on the contacts that the defendant creates with the forum.  See Walden, 134 S. Ct. at 1122; see also, e.g., U.S. v. Menutti, 679 F.2d 1032, 1035 (2d Cir. 1982) (holding that "a conspiracy continues until the conspirators receive their payoffs"); Dooley, 786 F. Supp. at 75-76 ("The UTC Individual Defendants also argue that several of the defendants' visits to Washington, D.C. took place after Dooley's demotion in October 1988, and therefore, cannot give rise to the plaintiff's complaint.  This argument is unavailing. Plaintiff Dooley alleges that the harm he has suffered only initiated with his demotion.  He claims that the illegal conspiracy to bribe Saudi Arabian officials continues; consequently, the harm he suffers, from opposing the ongoing conspiracy, continues.  Thus, business trips to Washington, D.C. taken by UTC Individual Defendants after October 1988 are very relevant to plaintiff Dooley's claims.").

information regarding specific contacts between the Trump Campaign and Russian agents regarding the DNC e-mails, and the discussion of those contacts with Russian agents at meetings in the District in the spring of 2016—are far more substantial than the type of conclusory or entirely hypothetical allegations that courts deem insufficient to support a request for jurisdictional discovery. *Compare Edmond,* 949 F.2d at 424, *with FC Inv. Grp. LC*, 529 F.3d at 1094; and *Naartex*, 722 F.2d at 788. Here, as in prior cases, at the very least, the jurisdictional question should not be resolved without a fuller record. *Crane,* 814 F.2d at 760 ("[Plaintiff] has pointed to links [defendant] has with the District, sufficient at least to permit further inquiry regarding personal jurisdiction, so that the statutory and constitutional questions can be resolved on a fuller record."). Plaintiffs describe the proposed discovery below, in Section IV.

## III.   Plaintiffs Should Be Granted Jurisdictional Discovery Regarding Co-Conspirators' Contacts with the District

Besides establishing personal jurisdiction based on the Defendant's own direct contacts with the forum (or any of the other bases asserted by Plaintiffs here), Plaintiffs can establish that Defendants "transacted business" in the District from which their claims arose through the actions that their co-conspirators took in the District in furtherance of the conspiracy. The D.C. Circuit permits conspiracy jurisdiction resulting from the in-forum actions of co-conspirators on an agency theory, where plaintiffs have pleaded: 1) the existence of a conspiracy; 2) the non-resident defendant's participation in or agreement to the join the conspiracy; and 3) an overt act by a co-conspirator in furtherance of this conspiracy within the forum, sufficient to give the court jurisdiction over that co-conspirator. *Edmond*, 949 F.2d at 425; *Second Amendment Foundation*, 274 F.3d at 524; *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1030–31 (D.C. Cir. 1997). Thus, "[s]o long as any one co-conspirator commits at least one overt act in the forum jurisdiction sufficient to establish long-arm jurisdiction over that person and the act

committed is in furtherance of the conspiracy, there is personal jurisdiction over all members of the conspiracy." *FC Inv. Grp. LC.*, 479 F. Supp. 2d at 41–42.

The D.C. Circuit has specifically allowed jurisdictional discovery into allegations pertaining to conspiracy jurisdiction where plaintiffs have pleaded non-conclusory allegations that would establish a conspiracy, and have identified at least one specific overt act in the forum by co-conspirators in furtherance of the conspiracy:

> [I]t is an abuse of discretion to deny jurisdictional discovery where the plaintiff has specifically alleged: (1) the existence of a conspiracy, (2) the nonresident's participation, and (3) an injury-causing act of the conspiracy within the forum's boundaries.

*Edmond*, 949 F.2d at 424–25.

Plaintiffs recognize that the Supreme Court's recent decisions regarding specific jurisdiction have renewed focus on due process limits, raising concerns that could apply to the *outer* limits of this type of conspiracy jurisdiction—particularly if, unlike here, the non-resident defendant has had no personal contacts with a forum at all. But neither *Walden* nor *Bristol-Myers* addressed conspiracy jurisdiction or reversed the D.C. Circuit's governing standards for obtaining discovery in this context. *Walden*, 134 S. Ct. at 1121-22; *Bristol-Myers Squibb,* 137 S. Ct. at 1780. In *Walden*, the Court specifically noted that a Defendant's contacts for due process purposes could be either personal *or through others*: "physical entry into the State—either by the defendant in person *or through an agent, goods, mail, or some other means*—is certainly a relevant contact." 134 S. Ct. at 1122 (emphasis added); *see Second Amendment Foundation*, 274 F.3d at 523 (describing co-conspirators acting as agents for nonresident defendants in the forum).

Moreover, this case also does not approach the outer limits of conspiracy jurisdiction where a defendant who has never had any contact at all with a forum is only brought into that forum only via the actions of a co-conspirator. Here, by contrast, Plaintiffs have alleged

extensive direct contacts with this District by Defendants, including the Campaign's own repeated contacts with this forum in furtherance of the very conspiracy at issue and other actual direct contact by Defendant Stone.  Jurisdictional discovery may well reveal further direct contact.

Under the controlling standard for conspiracy jurisdiction, Plaintiffs' allegations regarding co-conspirators' contacts with the District establish that both the Campaign and Roger Stone are subject to this Court's jurisdiction, or at the very least should be subject to jurisdictional discovery.  First, as set forth above, *supra* at Section II.B., Plaintiffs have pleaded more than conclusory allegations of a conspiracy, sufficient to meet the requirement of non-conclusory allegations to obtain discovery.  Second, Plaintiffs have pleaded specific actions taken within the District by Defendants' co-conspirators in furtherance of this conspiracy and directly relevant to Plaintiffs' claims: the extraction of large volumes of data from the DNC servers located in D.C.  Am. Compl. ¶¶ 86-87.[10]  This conduct within the District by the co-conspirators (the hackers acting on behalf of the Russian government) who perpetrated the targeted and ongoing theft of the DNC e-mails for political gain constitutes a series of overt acts in furtherance of the alleged conspiracy within the forum, actions that would give rise to personal jurisdiction in this Court over the hackers, and therefore, over their co-conspirators, the Defendants.

These very significant overt acts (or, as discovery may show, series of acts related to the hack and its dissemination) within the District by co-conspirators are sufficient to establish a *prima facie* case for jurisdiction over the other members of the conspiracy that resulted in the

---

[10] The unauthorized access and exfiltration of data from the DNC servers continued until at least mid-June 2016, Am. Compl. ¶ 86-87, when the conspiracy was already well underway.

publication of material from this hack.  At a minimum, this allegation supports allowing jurisdictional discovery to further develop the record of the contacts by those working together with Defendants in this common scheme.

## IV.  Plaintiffs' Proposed Discovery

If this motion is granted, Plaintiffs will serve on Defendants the following discovery requests for material relevant to establishing Defendants' relevant contacts with the District. As used below, the term "Relevant Forum Contact" refers to "any in-person meeting, telephone conversation, or other communication, including electronic communications, conducted in the District of Columbia involving any Defendant, or between any Defendant and any Russian or Russian agent or any agent of WikiLeaks, in which any form of assistance by Russia or Russian agents to the Trump Campaign was discussed or facilitated, including but not limited to any discussions of the DNC emails, publication of the DNC emails by WikiLeaks, or the resulting impact on the Clinton campaign."

1.      **All initial disclosure required under Federal Rule of Civil Procedure 26(a)**, but limited to the subject of Relevant Forum Contacts; and in addition, to the extent not duplicative of Rule 26(a) disclosures:

2.      **Interrogatories pursuant to Federal Rule of Civil Procedure 33** requiring the Defendants to identify:

- all persons with knowledge of any Relevant Forum Contact;

- all persons in possession of or with responsibility for maintaining documents, electronically stored information, or tangible things (hereinafter "materials") relating to Relevant Forum Contacts;

- all persons with knowledge of who may possess or have responsibility for maintaining materials relating to Relevant Forum Contacts;

- whether any materials relating to Relevant Forum Contacts have been destroyed, defaced, deleted, or spoliated in any way; and if so, the nature and content of those materials and all facts relating to their destruction, defacement, deletion, or spoliation, including, without limitation, the identity of all persons involved in ordering or carrying out that destruction, defacement, deletion, or spoliation.

3.    **Requests pursuant to Federal Rule of Civil Procedure 34** for all materials relating to the date, time, location, participants and subject matter of any Relevant Forum Contacts, including, without limitation:

- All materials relating to the March 31, 2016 meeting in the District of Columbia between then-candidate Trump and the Trump Campaign's foreign-policy team;

- All materials relating to the April 27, 2016 meeting in the District of Columbia between then-candidate Trump, other high-ranking Trump Campaign officials, and Russian Ambassador Kislyak in the District of Columbia.

- All materials relating to any other meetings, discussions or other actions by agents of the Trump Campaign in the District of Columbia in which any form of assistance by Russia or Russian agents to the Trump Campaign was discussed or facilitated.

- All materials relating to other Relevant Forum Contacts.

4.    **Depositions Pursuant to Federal Rule of Civil Procedure 30** of persons identified by initial disclosure, interrogatory responses, and disclosed materials as having

knowledge relating to any Relevant Forum Contacts or relating to the location and condition of evidence pertaining to Relevant Forum Contacts.

As relevant to the conspiracy theory of jurisdiction based on actions of co-conspirators in the District, Plaintiffs also will serve on the Defendants all the discovery previously described, but with the following adjustment:  The term "Relevant Forum Contacts" will be expanded to refer to "all contacts in the District of Columbia (1) between the Defendants, (2) between the Defendants and Russians or Russian agents or agents of WikiLeaks, or (3) attended by Russians, Russian agents, agents of WikiLeaks, or others acting in concert with them, in which any form of assistance by Russians or Russian agents to the Trump Campaign was discussed or facilitated including but not limited to any discussions of the DNC emails, publication of the DNC emails by WikiLeaks, or the resulting impact on the Clinton campaign."

## CONCLUSION

For the foregoing reasons, in the alternative to denying Defendants' pending Motions to Dismiss for lack of personal jurisdiction, Plaintiffs respectfully request the Court grant this motion for jurisdictional discovery.


Date: May 24, 2018                    By: /s/ *Benjamin L. Berwick*

                                      *Counsel for Plaintiffs*

                                      BENJAMIN L. BERWICK (D.D.C. Bar No. MA0004)
                                      United to Protect Democracy
                                      10 Ware St.
                                      Cambridge, MA 02138
                                      (909) 326-2911
                                      Ben.Berwick@protectdemocracy.org

*Additional Counsel for Plaintiffs*

IAN BASSIN
(NY Attorney Reg. No. 4683439)
United to Protect Democracy
222 Broadway
19th Floor
New York, NY 10038
(202) 856-9191
Ian.Bassin@protectdemocracy.org

JUSTIN FLORENCE
(D.C. Bar No. 988953)
ANNE TINDALL
(D.C. Bar. No. 494607)
United to Protect Democracy
2020 Pennsylvania Ave. NW, #163
Washington, DC 20006
(202) 856-9191
Justin.Florence@protectdemocracy.org
Anne.Tindall@protectdemocracy.org

NANCY GERTNER
(MA Bar No. 190140)
Fick & Marx
100 Franklin Street, 7th floor
Boston, MA 02110
(857) 321-8360
ngertner@fickmarx.com

RICHARD PRIMUS
(D.C. Bar No. 472223)
The University of Michigan Law School*
625 S. State Street
Ann Arbor, MI 48109
(734) 647-5543
PrimusLaw1859@gmail.com
* For identification purposes

STEVEN A. HIRSCH
(CA Bar No. 171825)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400
shirsch@keker.com

STEPHEN P. BERZON
(CA Bar No. 46540)*
BARBARA J. CHISHOLM
(CA Bar No. 224656)*
DANIELLE LEONARD
(CA Bar No. 218201)*
Altshuler Berzon LLP
177 Post Street Suite 300
San Francisco, CA
(415)421-7151
sberzon@altber.com
bchisholm@altber.com
dleonard@altber.com
*pro hac vice forthcoming

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROY COCKRUM, SCOTT COMER, and ERIC SCHOENBERG, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:17-cv-1370-ESH ) |
| DONALD J. TRUMP FOR PRESIDENT, INC., and ROGER STONE, | ) ) ) |
| Defendants. | ) ) ) |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO
CONDUCT LIMITED JURISDICTIONAL DISCOVERY**

The Court hereby GRANTS Plaintiffs' Motion for Leave to Conduct Limited

Jurisdictional Discovery.


It is SO ORDERED this _____ day of _____, 2018


_____

The Honorable Ellen S. Huvelle
U.S. District Judge