# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROY COCKRUM, ET AL.,

        *Plaintiffs,*

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,

        *Defendants.*

Case No. 1:17-cv-1370-ESH

---

## DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY

---

Jeffrey Baltruzak
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
jbaltruzak@jonesday.com

Michael A. Carvin
   *Counsel of Record*
Vivek Suri
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com
vsuri@jonesday.com

*Counsel for Donald J. Trump for President, Inc.*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Introduction .......................................................................................................... 1

Argument .............................................................................................................. 1

    A.  The motion for discovery is untimely ............................................................ 3

    B.  The motion for discovery is futile ................................................................ 6

    C.  The motion for discovery is groundless ...................................................... 10

    D.  The specific discovery requests are vastly overbroad ............................... 12

    E.  If necessary, the Court should dismiss the case on other grounds ............ 14

Conclusion ........................................................................................................... 15

Certificate of Service

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alkanani v. Aegis Defense Services, LLC,*
976 F. Supp. 2d 13 (D.D.C. 2014) ........................................................................ 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ 1

*Capel v. Capel,*
272 F. Supp. 3d 33 (D.D.C. 2017) ...................................................................... 6

*Chalabi v. Hashemite Kingdom of Jordan,*
543 F.3d 725 (D.C. Cir. 2008) .......................................................................... 15

*Cheney v. U.S. District Court,*
542 U.S. 367 (2004) .................................................................................... 2, 14

*City of Moundridge v. Exxon Mobil Corp.,*
244 F.R.D. 10 (D.D.C. 2007) ............................................................................ 3

*Coalition for Mercury-Free Drugs v. Sebelius,*
725 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................... 12

\*   *Crane v. Carr,*
814 F.2d 758 (D.C. Cir. 1987) .......................................................................... 7

*Dooley v. United Technologies Corp.,*
786 F. Supp. 65 (D.D.C. 1992) .......................................................................... 8

*Eliahu v. Israel,*
2015 WL 981517 (N.D. Cal. Mar. 3, 2015) ............................................................ 4

*FC Investment Group LC v. IFX Markets, Ltd.,*
529 F.3d 1087 (D.C. Cir. 2008) .................................................................... 1, 10

*Grynberg v. Ivanhoe Energy, Inc.,*
490 F. App'x 86 (10th Cir. 2012) ........................................................................ 3

*GSS Group Ltd. v. National Port Authority,*
2011 WL 13121428 (D.D.C. Aug. 10, 2011) ............................................................ 5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Hayes v. FM Broadcast Station WETT,*
  930 F. Supp. 2d 145 (D.D.C. 2013) ....................................................... 12

*Helmer v. Doletskaya,*
  393 F.3d 201 (D.C. Cir. 2004) ................................................................. 6

*Holder v. Haarmann & Reimer Corp.,*
  779 A.2d 264 (D.C. 2001) ........................................................................ 6

*Kelly v. Syria Petroleum Development B.V.,*
  213 F.3d 841 (5th Cir. 2000) .............................................................. 3, 5

*Mwani v. bin Laden,*
  417 F.3d 1 (D.C. Cir. 2005) ..................................................................... 6

*Perry v. Schwarzenegger,*
  591 F.3d 1147 (9th Cir. 2010) .............................................................. 13

*Phoenix Consulting Inc. v. Republic of Angola,*
  216 F.3d 36 (2000) ........................................................................... 14, 15

*SEC v. Dresser Industries, Inc.,*
  628 F.2d 1368 (D.C. Cir. 1980) ............................................................... 2

*Second Amendment Foundation v. U.S. Conference of Mayors,*
  274 F.3d 521 (D.C. Cir. 2001) ........................................................*passim*

*Shoppers Food Warehouse v. Moreno,*
  746 A.2d 320 (D.C. 2000) ........................................................................ 8

*Sinochem International Co. v. Malaysia International Shipping Corp.,*
  549 U.S. 422 (2007) ............................................................................... 15

*United Galvanizing Inc. v. Imperial Zinc. Corp.,*
  2008 WL 4746334 (S.D. Tex. Oct. 27, 2008) ......................................... 3

*Walden v. Fiore,*
  134 S. Ct. 1115 (2014) ........................................................................... 12

*West v. Holder,*
  60 F. Supp. 3d 190 (D.D.C. 2014) ........................................................... 7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

STATUTES

D.C. Code § 13-423 ........................................................................................................... 6

OTHER AUTHORITIES

10 *Works of Thomas Jefferson* (Paul Ford ed. 1905) ................................................. 14

# INTRODUCTION

Plaintiffs' motion for discovery is a last-ditch effort to launch a fishing expedition into the President's and the Campaign's files. The Court should deny the motion and dismiss Plaintiffs' claims.

# ARGUMENT

A district court "has broad discretion in its resolution of discovery problems," including in the context of "jurisdictional discovery." *FC Investment Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008). Three unique concerns raised by Plaintiffs' motion should guide the Court's exercise of that discretion.

*First*, Plaintiffs' lawyers have, from the beginning, described this lawsuit as "a vehicle for discovery of documents and evidence" from the Trump Campaign. (Mot. To Dismiss 1.) This dramatically overbroad motion confirms that motivation. Ordinarily, however, a plaintiff who wants to "unlock the doors of discovery" must file a complaint that "survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Amended Complaint cannot do so, because it suffers from a host of flaws set out in the motion to dismiss. No amount of discovery can cure those flaws. It cannot be the case that a plaintiff can fail to plead subject-matter jurisdiction, fail to establish venue, fail to plead claims under the law of the correct State, fail to plead a plausible factual theory, fail to plead the legal elements of his claims, and fail to show that his legal theories comport with the Constitution—yet still get exactly what he wants out of the lawsuit, under the guise of "jurisdictional" discovery.

*Second*, Plaintiffs' proposed discovery targets the President of the United States. Courts have an obligation to ensure that private plaintiffs do not use "civil discovery" on "meritless claims" to compromise the President's "ability to discharge" his "constitutional responsibilities." *Cheney v. U.S. District Court*, 542 U.S. 367, 382, 386 (2004). Plaintiffs seek to do just that here. They request materials relating to "then-candidate Trump." (Mem. 17.) They also request "depositions" of "persons … having knowledge relating to any Relevant Forum Contacts"—a category that presumably includes the President, since Plaintiffs define "Relevant Forum Contacts" to include certain meetings involving "then-candidate Trump." (Mem. 17–18.)

*Third*, the proposed discovery directly overlaps with the Special Counsel's pending criminal investigation and prosecutions. Courts must manage parallel criminal and civil proceedings with care, lest expansive civil discovery "seriously injure the public interest" or "prejudice" the defendant in the criminal case. *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1376 (D.C. Cir. 1980). Discovery would injure the public interest, by forcing the Special Counsel to coordinate not just with congressional committees but also with these private plaintiffs. Discovery also threatens to prejudice individuals who have been or will be indicted, by potentially requiring them to sit for civil depositions despite their privilege against self-incrimination.

These factors would strongly counsel against allowing even justified jurisdictional discovery. Plaintiffs' motion, however, is wholly defective for five separate reasons: it is untimely, futile, groundless, overbroad, and unnecessary to reach.

**A. The motion for discovery is untimely**

"If a party needs jurisdictional discovery, that party has an obligation to request it in a timely manner," "at an appropriate stage in the course of litigation." *City of Moundridge v. Exxon Mobil Corp.*, 244 F.R.D. 10, 14 (D.D.C. 2007).

The proper time for moving for discovery is when "defend[ing] against … the motion to dismiss." *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 525 (D.C. Cir. 2001). As a result, a plaintiff forgoes the opportunity to request discovery by waiting to move for it until after the motion to dismiss is fully briefed. In one case, the Fifth Circuit ruled that the plaintiffs waited too long to seek discovery, even though the plaintiffs had "stated their desire to conduct discovery" in response to the motion to dismiss, because they "did not formally" move for discovery until months after the motion was fully briefed. *Kelly v. Syria Petroleum Development B.V.*, 213 F.3d 841, 850, 855 (5th Cir. 2000). In another, the Tenth Circuit agreed that a motion for discovery came "too late in the process" because "the plaintiffs filed their motion only after the parties completed extensive briefing." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 104 (10th Cir. 2012). Similarly, a third court denied discovery because it "was not sought until after the motion [to dismiss] was fully briefed." *United Galvanizing Inc. v. Imperial Zinc. Corp.*, 2008 WL 4746334, at *11 (S.D. Tex. Oct. 27, 2008). And yet another court ruled that "Plaintiff's request for discovery [was] untimely" because, "despite the deficiencies identified in Defendant's Motion to Dismiss, Plaintiff waited until after oral argu-

ment on Defendant's motion to seek discovery." *Eliahu v. Israel*, 2015 WL 981517, at *9 (N.D. Cal. Mar. 3, 2015).

Plaintiffs' motion here is likewise untimely. Since they filed this lawsuit about a year ago, Plaintiffs have turned down multiple opportunities to move for discovery:

- In September 2017, the Campaign moved to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. Plaintiffs failed to move for discovery.

- In October 2017, the Campaign moved to dismiss the Amended Complaint for lack of personal jurisdiction. Plaintiffs again failed to move for discovery. Indeed, they affirmatively argued that the Campaign's "protestations about discovery" are not "relevant to the pending motions." (Opp. 5 n.3.)

- In December 2017, the Campaign filed a reply explicitly pointing out that Plaintiffs had "never tried" to file a formal motion for "jurisdictional discovery." (Reply 6.) Yet again, Plaintiffs failed to move for discovery.

- Four months passed between Plaintiffs' filing of their surreply in January 2018 and the hearing on the motion to dismiss in May 2018. During those four months, Plaintiffs—fully aware that the Campaign challenged personal jurisdiction—once more refrained from moving for discovery.

- On May 17, 2018, this Court held a hearing. Despite extensive questioning on personal jurisdiction, Plaintiffs never alerted the Court that they planned to seek discovery.

- At the hearing, the Court—over the Campaign's objection—gave Plaintiffs "until tomorrow" to file additional materials in support of the motion to dismiss. (Tr. 138.) Plaintiffs asked for time until "next week," but the Court answered "no." (*Id.*) Yet Plaintiffs failed to file a motion for discovery the day after the hearing. They instead waited until May 24—a week after the hearing, four months after the motion to dismiss was fully briefed, eight months after the Campaign first raised the defense of lack of personal jurisdiction, and ten months after the filing of the lawsuit.

This delay is part of a pattern. Plaintiffs waited until the hearing to say that they "would be happy to amend" the complaint to cure their failure to plead the amount in controversy properly—but, to this day, have failed to move for leave to amend. (Tr.

4

38.) They waited until after the hearing to file the emails whose disclosure is sup-posedly tortious. They waited until after the hearing to file three cases that they say supports their argument under § 1985(3). Now, they have waited ten months to move for discovery. Enough.

Plaintiffs will likely point to a single footnote in their seventy-page opposition to the motion to dismiss that reads: "Plaintiffs should be allowed to take jurisdictional discovery." (Opp. 18 n.7.) That footnote does not constitute a timely request for dis-covery. If Plaintiffs wanted to "take jurisdictional discovery," "[they] should have—as countless other litigants in its position have—moved for the opportunity." *GSS Group Ltd. v. National Port Authority*, 2011 WL 13121428, at *6 (D.D.C. Aug. 10, 2011). In that motion, they should have demonstrated "a good faith belief that such discovery will enable it to show that the court has personal jurisdiction" and should have made "a detailed showing of what discovery [the plaintiff] wishes to conduct." *Id.* Plaintiffs' "footnote … did neither." *Id.* "Thus, even if the footnote had constitut-ed a request for jurisdictional discovery—which it most certainly did not—that re-quest would have been woefully deficient." *Id.*; *see Kelly*, 213 F.3d at 850 (motion for discovery was untimely because it was filed after the motion to dismiss was fully briefed, even though the plaintiffs had "stated their desire to conduct discovery" ear-lier). The Campaign pointed out these flaws five months ago in its reply in support of the motion to dismiss (Reply 6), but Plaintiffs have waited until now to try to fix the problem. Too late.

**B. The motion for discovery is futile**

A court should deny jurisdictional discovery where the facts Plaintiffs seek to uncover would not "affect [the] jurisdictional analysis." *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005). Here, the additional facts Plaintiffs claim they might uncover would not affect either the long-arm statute or the Due Process Clause.

**1. Long-Arm Statute.** Plaintiffs seek discovery in order to establish jurisdiction under the transacting-business provision of the long-arm statute (D.C. Code § 13-423(a)(1)). (Mem. 5 & n.4.) But no amount of discovery can change the reality that the transacting-business clause simply does not cover this case.

The act of committing or conspiring to commit a tort does not trigger jurisdiction under the transacting-business provision. For one thing, as the words "transacting" and "business" suggest, the transacting-business clause applies only where "the defendant has purposefully engaged in some type of commercial or business-related activities directed at District residents." *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001); *see Capel v. Capel*, 272 F. Supp. 3d 33, 39 (D.D.C. 2017) ("Contacts falling under the 'transacting any business provision' usually must be commercial"). Committing or conspiring to commit a tort is not a commercial activity—much less one "directed at District residents" (*Holder*, 779 A.2d at 271).

For another thing, the long-arm statute includes "a precise and intentionally restricted tort section" that "requires that both act and injury occur in the District of Columbia." *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004). Treating the commission of a tort as the transaction of business would obliterate these precise

restrictions, enabling a plaintiff to sue in the District even where the injury occurs *outside* the District. A plaintiff "cannot expect this Court to interpret" the transacting-business clause "to permit the exercise of specific personal jurisdiction over" a defendant "under circumstances in which other provisions in that same statute would clearly prohibit such jurisdiction." *Alkanani v. Aegis Defense Services, LLC*, 976 F. Supp. 2d 13, 27 (D.D.C. 2014).

Precedent confirms this understanding of the long-arm statute. In *Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987) (R.B. Ginsburg, J.), the D.C. Circuit held that the statute denied jurisdiction over an out-of-District defendant who published defamatory and privacy-invading letters in the District. The Court explicitly ruled that the defamation and invasion-of-privacy claims "do not fit" under the transacting-business clause, but instead "fal[l] under" the tort clauses. *Id.* at 233. Similarly, in *West v. Holder*, 60 F. Supp. 3d 190, 192 (D.D.C. 2014) this Court held that the statute denied jurisdiction over state officials outside the District who "communicate[d]" with federal officials in the District regarding an allegedly unconstitutional policy. The Court emphasized that that the transacting-business clause "embraces … contractual activities", that "contacts falling under the 'transacting any business provision' usually must be commercial," and that the plaintiff "d[id] not cite any cases supporting an interpretation … that includes non-commercial activity." *Id.* at 195.

These principles doom Plaintiffs' case. Even if discovery were to show *dozens* of meetings in the District where the participants conspired to disclose private information, those meetings still would not count as transacting business. They would

qualify at most as tortious activity covered by the tort clauses, not commercial activity covered by the transacting-business clause.

Plaintiffs' contrary theory emphasizes *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000), but that case focused solely on the *actual D.C. business* transacted by the defendant. In *Shoppers*, the court ruled that the long-arm statute conferred jurisdiction over a Maryland grocery store that advertised extensively in the District, drawing a District resident to its premises, where the resident suffered a slip-and-fall accident. 746 A.2d at 330. Jurisdiction thus rested on the defendant's "business activity"—"extensive and substantial advertisements"—directed at District residents. *Id.* at 331. There is no such "business activity" here.

Plaintiffs also rely on *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521 (D.C. Cir. 2001), and *Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992). But these cases show, at most, that *commercial, business-related conspiracies* can fit within the transacting-business clause. In *Second Amendment Foundation*, the court suggested in *dicta* that the transacting-business clause can cover (for example) "a check-kiting conspiracy" or a conspiracy to "defraud [the] plaintiff and [to] breach [a] contract." 274 F.3d at 523–24. And in *Dooley*, the court held that the transacting-business clause covers a conspiracy concerning the "sale of Black Hawk helicopters." 786 F. Supp. at 76. Neither case holds that even non-commercial, tortious conspiracies count as transacting business.

In sum, no amount of discovery would establish jurisdiction under the transacting-business clause. And Plaintiffs do not even argue that discovery could establish

jurisdiction under the tort clauses. Those clauses turn on the site of the plaintiffs' injury. Discovery into *the defendant's activities* cannot reveal the location of *the plaintiffs' injuries*.

**2. Due Process.** Plaintiffs also seek discovery in order to establish that this case arises out of the Campaign's purposeful contacts with the District. But the facts Plaintiffs hope to uncover would show no such thing.

Plaintiffs argue that there was a "single conspiracy, pursuant to which Russia agreed that it would help the Trump Campaign, including by releasing thousands of emails," and that discovery will uncover "conduct in the District in furtherance of [that] broader conspiracy." (Mem. 6, 9.) But Plaintiffs' fatal, threshold problem is that a "conspiracy" is, by definition, an "agreement ... to participate in *an unlawful act*." *Second Amendment Foundation*, 274 F.3d at 524 (emphasis added). Since no-one claims that the Campaign was involved in the hacking, the only supposedly un-lawful act that Plaintiffs have identified is the act of releasing Plaintiffs' allegedly private information. Plaintiffs have never explained how a purported agreement to "help the Trump Campaign" by leaking emails embarrassing to Hillary Clinton would violate any D.C. or federal law (much less a law that Plaintiffs have standing to vindicate). Accordingly, only an agreement to release private information about Plaintiffs would be an "unlawful act" agreement; an agreement to release emails to embarrass Secretary Clinton or the DNC would not be an "unlawful act" agreement. That, in turn, means that the only acts that qualify as acts in furtherance of the

conspiracy are meetings discussing the release of Mr. Cockrum's and Mr. Schoen-
berg's social security numbers or Mr. Comer's sexual orientation.

But even plaintiffs do not claim—indeed, they cannot plausibly claim—that dis-
covery will show that any of the D.C. meetings discussed releasing social security
numbers of DNC donors or embarrassing Mr. Comer. Rather, Plaintiffs have argued
at most that discovery could reveal meetings in the District in furtherance of a
broader "conspiracy" *to harm the Clinton campaign*. But even if this wholly fanciful
scenario were proven, it would not establish jurisdiction, because it would not estab-
lish acts in furtherance of a *conspiracy—i.e.*, an agreement to commit *unlawful acts*.

## C. The motion for discovery is groundless

To secure jurisdictional discovery, a plaintiff must further establish "a good faith
belief," "based on [more than] conjecture or speculation," "that such discovery will
enable it to show that the court has personal jurisdiction." *FC Investment Group*,
529 F.3d at 1093–94. Plaintiffs cannot do so here. They identify four events that oc-
curred before the release of the emails and that supposedly link the Campaign to
the District of Columbia. (Mem. 10–11.) But Plaintiffs fail to show that *any* of these
four events has anything to do with WikiLeaks' release of DNC emails generally (let
alone Plaintiffs' purportedly private information in particular).

Plaintiffs state that the Campaign's "foreign policy team was based in D.C." and
"was led by someone who lived and worked in D.C." (Mem. 10.) But relevant allega-
tions state that the Campaign's "D.C.-area office" was located "in Alexandria, *Vir-
ginia*"—not in the District. (Am. Compl. 36.) In any event, what does the team have

to do with the release of emails on WikiLeaks? Plaintiffs speculate that the team "conducted and directed" the "collaboration with Russia" "in the District," but identify no factual basis for this speculation, much less for the further speculation that the "collaboration" entailed releasing private information on WikiLeaks. (Mem. 10.)

Plaintiffs continue that the "then-candidate Trump met with the Campaign's foreign policy team in D.C. on March 31, 2016." (Mem. 10.) But again, what does that meeting have to do with the release of emails on WikiLeaks? Plaintiffs claim that one can infer that the attendees discussed the emails because the meeting was "attended by George Papadopoulos." (Mem. 10.) Yet the Statement of Offense on which Plaintiffs rely states only that Papadopoulos stated "that he had connections that could help arrange a meeting between then-candidate Trump and President Putin." Statement ¶ 9. Nothing there about the emails, WikiLeaks, or the DNC.

Plaintiffs add that, on April 27, 2016, "Mr. Trump … met with Russian Ambassador Kislyak in D.C." (Mem. 11.) Once more, Plaintiffs never allege that Mr. Trump, the ambassador, or anyone else discussed WikiLeaks or the DNC at this meeting.

Finally, Plaintiffs state that, on July 7, 2016, "Paul Manafort emailed a Russian oligarch" from the District. (Mem. 11.) Even Plaintiffs do not claim, however, that this email had any connection with the DNC; instead, Plaintiffs themselves state that the purpose of the email was "to offer private briefings." (Mem. 11.)

That leaves Plaintiffs with no concrete basis for expecting discovery to show that the Campaign's contacts with the District had anything to do with WikiLeaks' disclosure of their private facts. Thus, their motion must fail. A plaintiff "is not entitled

to jurisdictional discovery just because he hopes that it might turn something up."
*Hayes v. FM Broadcast Station WETT*, 930 F. Supp. 2d 145, 152 (D.D.C. 2013).

### D. The specific discovery requests are vastly overbroad

"Jurisdictional discovery is not warranted" where the plaintiffs' "request[s] …
[are] not narrowly tailored to produce information relevant to the issue of [jurisdic-
tion]." *Coalition for Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 4 (D.D.C.
2010). Plaintiffs' motion fails on this score too, because Plaintiffs' specific discovery
requests are far from narrowly tailored to the issue of personal jurisdiction.

*First*, Plaintiffs improperly seek discovery regarding contacts with the District ir-
respective of when the contacts occurred. (Mem. 16.) For the exercise of personal ju-
risdiction to comply with the Constitution, the claim "must arise out of contacts that
the defendant himself creates with the forum." *Walden v. Fiore*, 134 S. Ct. 1115,
1122 (2014). It is impossible for a tort claim to arise out of contacts that occur *after*
the commission of the tort. Here, the supposed tort was committed on July 22, 2016,
the date WikiLeaks released Plaintiffs' allegedly private information. Plaintiffs thus
have no basis for seeking materials about contacts *after* July 22.

*Second*, Plaintiffs improperly seek discovery regarding communications "involv-
ing any [single] Defendant"—even if no other defendant or alleged co-conspirator
participated. (Mem. 16.) There is no justification for requesting internal communi-
cations. Plaintiffs' theory of jurisdiction rests on the premise that the Campaign
*conspired* in the District. By definition, the Campaign cannot conspire at an inter-
nal campaign meeting at which only Campaign officials are present.

Moreover, discovery of the Campaign's internal communications would violate "the First Amendment privilege against compelled disclosure of internal campaign communications." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010); *see id.* at 1158 (granting mandamus against a district-court order compelling disclosure of "internal campaign communications" in "civil discovery"). That is particularly so because the kinds of communications Plaintiffs seek—"any discussions of the DNC emails, publication of the DNC emails by WikiLeaks, or the resulting impact on the Clinton campaign"—concern issues that were front-page news and that had enormous political relevance. It is deeply intrusive—and unconstitutional—to order the Trump Campaign to turn over such discussions of campaign strategy to donors and staffers of the opposing political party. (Plaintiffs' request is particularly ironic, since they claim that it was illegal to disclose the DNC's own emails.)

*Third*, Plaintiffs improperly seek discovery regarding "the March 31, 2016 meeting" and the "April 27, 2016 meeting." (Mem. 17.) As noted, Plaintiffs identify no reason to believe that anyone affiliated with the Campaign discussed the emails in general, let alone their private information in particular, at these meetings.

*Fourth*, Plaintiffs improperly seek "depositions." (Mem. 17.) As a general matter, Plaintiffs neither explain why they need any depositions at all, nor spell out what a deposition would uncover that their extensive requests for documentary discovery would not. More specifically, to the extent Plaintiffs wish to depose the President, their request violates the separation of powers. Judicial orders directing a sitting President to testify compromise the "independence" of the Executive Branch, be-

13

cause they enable "the several courts [to] bandy him from pillar to post, keep him constantly trudging from north to south & east to west" in response to requests for discovery. 10 *Works of Thomas Jefferson* 404, n. (Paul Ford ed. 1905). To the extent Plaintiffs wish to depose other sitting officials—such as the Vice President or Attorney General—their demand improperly subjects "senior members of the Executive Branch" to "civil discovery" on "meritless claims." *Cheney*, 542 U.S. at 385–86. To the extent Plaintiffs wish to depose defendants in pending criminal prosecutions brought by the Special Counsel, their demand threatens those defendants' right against self-incrimination and would greatly impede the Special Counsel's work.

*Finally*, Plaintiffs improperly seek discovery from the Campaign on "the conspiracy theory of jurisdiction based on actions of co-conspirators in the District." (Mem. 18.) At the hearing, Plaintiffs disclaimed any reliance on this "conspiracy theory of jurisdiction" with respect to the Campaign. The Court asked: "Are you basing your jurisdictional argument on coconspirator liability or on specific personal jurisdiction?" (Tr. 13.) Plaintiffs' counsel answered: "So let me be clear about this. We are alleging that the campaign engaged in acts in furtherance of the conspiracy in the forum. We are not relying on the acts of the campaign's coconspirators." (Tr. 14.) Plaintiffs cannot get discovery on a jurisdictional theory that they have disclaimed.

### E. If necessary, the Court should dismiss the case on other grounds

"Jurisdictional discovery … should not be authorized at all" if the court can dismiss the case on "other" grounds, "the resolution of which would impose a lesser burden upon the defendant." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d

36, 40 (2000). It is senseless to subject a defendant to the burdens of discovery on a claim that is bound to be dismissed anyway.

In particular, the Court may dismiss this case for lack of subject-matter jurisdiction and lack of venue without addressing personal jurisidiction. *See Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 431 (2007) ("A federal court has leeway to choose among threshold grounds for denying audience to a case on the merits"). Plaintiffs have failed to establish subject-matter jurisdiction, because they have failed to plead amount in controversy properly. They have also failed to establish venue, because they have failed to plead that a substantial part of the events giving rise to this lawsuit occurred in the District. The Court may dismiss the case on either of these grounds without resolving Plaintiffs' motion, which seeks only discovery with respect to "personal jurisdiction" and which never mentions subject-matter jurisdiction or venue. (Mem. 18.)

The Court may also dismiss this case on the merits without addressing personal jurisdiction. *See Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) ("[Precedent] requires that we prioritize the jurisdictional issue only when the existence of *Article III* jurisdiction is in doubt"). The Campaign has set out a wide range of reasons for which Plaintiffs' claims are hopeless. There is no need for discovery when Plaintiffs' claims are bound to fail for those reasons anyway.

## CONCLUSION

The Court should deny the motion for discovery.

Dated:  May 31, 2018

Respectfully submitted,

/s/ Michael A. Carvin

Jeffrey Baltruzak (PA Bar No. 318156)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
jbaltruzak@jonesday.com

Michael A. Carvin (DC Bar No. 366784)
  *Counsel of Record*
Vivek Suri (DC Bar No. 1033613)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com
vsuri@jonesday.com

*Counsel for Donald J. Trump for President, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated:  May 31, 2018

/s/ Michael A. Carvin
Michael A. Carvin
*Counsel for Donald J. Trump for President, Inc.*