**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROY COCKRUM, SCOTT COMER, and ERIC SCHOENBERG, | ) ) ) |
|  | ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:17-cv-1370-ESH |
|  | ) |
| DONALD J. TRUMP FOR PRESIDENT, INC., and ROGER STONE, | ) ) ) |
|  | ) |
| Defendants. | ) ) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT
LIMITED JURISDICTIONAL DISCOVERY**


**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................1

    I.      Plaintiffs' Allegations Provide Ample Reason to Believe that Limited Discovery Would Confirm that this Court Has Jurisdiction ..................................1

          A. The Campaign Transacted Business in D.C ......................................................1

          B. Plaintiffs Have Plausibly Alleged that the Campaign's Conduct in D.C. Was in Furtherance of the Conspiracy that Harmed Plaintiffs ..............................3

          C. Plaintiffs' Allegations Concerning Defendant Stone Are At Least Sufficient to Support Jurisdictional Discovery.......................................................5

    II.     Plaintiffs' Motion for Jurisdictional Discovery Is Timely....................................6

    III.    Plaintiffs' Proposed Jurisdictional Discovery Is Focused and Reasonable ............6

Plaintiffs have alleged that the Trump Campaign and Roger Stone entered into an unlawful agreement with Russian agents and WikiLeaks, whereby Russia would help Mr. Trump get elected in exchange for policy favors, and which included a plan to release stolen DNC emails. Even without discovery, Plaintiffs have alleged specific facts that show the existence of this conspiracy, including important conduct in furtherance of the conspiracy by Defendants and their co-conspirators in D.C. In response, the Campaign argues that the Court lacks jurisdiction *even if* Defendants colluded with the Kremlin to interfere in a U.S. presidential election (Campaign Opp'n at 9), and *even if* Defendants and their co-conspirators held "dozens of meetings in the District where the participants conspired to disclose private information" (*id.* at 7). Defendants err. Such a conspiracy *is* unlawful, and Plaintiffs have alleged that it was planned and executed at least in part in D.C. These allegations are sufficient to establish jurisdiction in this forum. At the very least, they warrant jurisdictional discovery.[1]

## ARGUMENT

I. **Plaintiffs' Allegations Provide Ample Reason to Believe that Limited Discovery Would Confirm that this Court Has Jurisdiction**

    A. **The Campaign Transacted Business in D.C.**

Defendants do not contest that the D.C. long-arm statute's "arise from" standard requires

---

[1] Defendants raise several premature and irrelevant issues. They worry that Plaintiffs might seek to depose the President, but Plaintiffs have not proposed that, and any and all objections can be resolved in due course. Defendants also speculate that jurisdictional discovery might interfere with the Special Counsel's investigation. Plaintiffs agree that investigation is of the utmost importance. While it is common for criminal and civil cases to proceed in parallel, were the Special Counsel to indicate that discovery would interfere, Plaintiffs would work with the parties and the Court to resolve any issues. Finally, Plaintiffs' counsel have *never* described this case as a "vehicle for discovery." Campaign Opp'n at 1. The Campaign's attribution of this quote to "Plaintiffs' lawyers," *id.*, is misleading. The quote is from an article by a law professor with no connection to this case, *see* Andy Wright, *DNC Hack Victims Sue Trump Campaign and Roger Stone*, Just Security, July 12, 2017, https://www.justsecurity.org/43077/dnc-hack-lawsuit/, which was later excerpted in a compilation of reactions to the case from several legal experts.

only a "discernible relationship" between the conduct and the claims. *See* Pls.' Mot. at 4-5. Nor do Defendants contest that under this flexible standard, conspiracy-based liability can arise from in-forum conduct in furtherance of that conspiracy—even if the conduct did not directly cause the plaintiff's harm. *See id.* at 5-8. Plaintiffs' claims in this case bear more than a "discernible relationship" to the alleged acts of Defendants and their co-conspirators in the forum. *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 335 (D.C. 2000). So the Campaign now shifts its focus to the "transaction of business" clause of Section 13-423(a)(1). It contends, for the first time, that "[c]ommitting or conspiring to commit a tort is not a commercial activity" within that section. *See* Campaign Opp'n at 6-8. That is wrong.

The jurisdictional question is whether Plaintiffs' claims are discernibly related to any business transacted by Defendant in the District, not whether committing a tort *is* a business activity. It is beyond dispute—as Defendants have admitted—that the Campaign transacted business in the District. *See* 5/17/18 Tr. at 44 ("We are transacting business in the District. The business was to elect Donald Trump president."). Plaintiffs have alleged, with specific facts, that some of the Campaign's meetings in D.C. were part of the conspiracy that gave rise to Plaintiffs' claims. *See* Pls.' Mot. at 10-11. That these meetings furthered the conspiracy does not change their character as meetings at which the business of the Campaign was conducted. Indeed, the business of the Campaign—the very reason for its existence—was identical to one of the goals of the alleged conspiracy: to help Mr. Trump get elected. Thus, this case is similar to *Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992), where the conspiracy at issue advanced the defendants' business purpose of selling helicopters.[2]

---

[2] *Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987), and *West v. Holder*, 60 F. Supp. 3d 190 (D.D.C. 2014) are inapposite, because in neither case did the defendant conduct any business in D.C.

2

The D.C. Circuit has long recognized that "[p]ersons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there." *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001). The Campaign's argument that actions in furtherance of a conspiracy (to the extent they result in torts) cannot also be business activity is entirely without foundation.[3] To the extent that Defendants intend to resurrect their earlier argument that Section 13-423(a)(1) *never* applies in the tort context, Plaintiffs have previously explained why that is incorrect as a matter of law. *See* Pls.' Surreply (ECF 50) at 1-2. Indeed, counsel for the Campaign rightly conceded that "[w]hat (a)(1) says quite explicitly and what *Shoppers* [*Food Warehouse*] says the decision is, if the tort in this case arises from transacting business in the District, then you are under (a)(1)." 5/17/18 Tr. at 44. Plaintiffs' claims are discernibly related to the business conducted by the Campaign in the District—the business of trying to get Donald Trump elected President by any means necessary, including unlawful means that caused harm to Plaintiffs.

### B. Plaintiffs Have Plausibly Alleged that the Campaign's Conduct in D.C. Was in Furtherance of the Conspiracy that Harmed Plaintiffs

The Campaign also wrongly seeks to redefine the scope of the alleged conspiracy. Campaign Opp'n at 10-12. Defendants misunderstand conspiracy liability and, consequently, which acts in furtherance of a conspiracy are relevant to the Court's jurisdictional analysis.[4] It is

---

[3] This Court has rejected narrowing the "transacting business" clause to *commercial* business. "Not only does this argument fly in the face of the actual language of the long-arm statute—which speaks of 'transacting *any* business,' . . . it is flatly contradicted by case law." *Rochon v. FBI*, 691 F. Supp. 1548, 1559-60 (D.D.C. 1988); *see also Doe v. Islamic Salvation Front*, 993 F. Supp. 3, 5-7 (D.D.C. 1998) (acting as spokesperson for terrorist group constitutes transacting business); *Heroes v. Heroes Found.*, 958 F. Supp. 1, 3-5 (D.D.C. 1996) (charitable organization "soliciting donations in the District's local newspaper" constitutes transacting business).

[4] Defendants' narrow characterization ignores long-standing substantive conspiracy law. *E.g.*, *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 900 (D.C. Cir. 2010) ("[A]

3

not necessary for the agreement between the co-conspirators to have explicitly contemplated dissemination of the DNC emails—although, to be clear, Plaintiffs have alleged that such dissemination was part of the explicit agreement (Pls.' Mot. at 9; Am. Compl. ¶¶ 13-15, 139-159)—as long as the dissemination was done by a co-conspirator in order to further the conspiracy. Participants in a conspiracy are civilly liable not only for agreed-upon unlawful acts, but also for other overt acts in furtherance of the conspiracy. *See Halberstam v. Welch*, 705 F.2d 472, 477, 481 (D.C. Cir. 1983); Pls.' Opp'n to Defs.' Mots. to Dismiss (ECF25) at 27 n.10.

Even if the conspiracy involved only an express agreement to influence the election by disseminating the stolen DNC emails, Plaintiffs have alleged sufficient facts to warrant discovery. *See* Pls.' Mot. at 12-13. The Campaign's assertion that Plaintiffs have not shown that the *known* meetings in D.C. had "anything to do with WikiLeaks' release of DNC emails," Campaign Opp'n at 10, ignores both the discussion at those meetings of contacts with the Kremlin and the timing of those meetings vis-à-vis known facts regarding the Campaign's attempts to obtain "dirt" on Clinton from the Russians. Pls.' Mot. at 12-13.[5] The Campaign also has no response to allegations demonstrating the plausibility of potential additional contacts with the forum, such as the presence in the District of the Campaign and important Campaign

---

conspiracy's purpose should not be defined in too narrow or specific terms.") (citation omitted); *Hobson v. Wilson*, 737 F.2d 1, 55 (D.C. Cir. 1984) ("The essence of a civil conspiracy is participation in a common and unlawful plan whose goals are known to all members—even if all parties are not privy to each individual act taken in furtherance of the scheme."), overruled on other grounds by *Abdelfattah v. U.S. Dept. of Homeland Sec.*, 787 F.3d 524 (D.C. Cir.2015); 737 F.2d at 51 ("The conspirators must share the general conspiratorial objective.").

[5] Plaintiffs cannot be expected to know precisely what was discussed at those meetings, given that the relevant information is in Defendants' possession and Plaintiffs have not yet taken discovery. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 81 F. Supp. 1, 11 (D.D.C. 2015) ("It is difficult for the Court to surmise what more Oxbow could offer before discovery has commenced.").

employees, including the foreign policy team. *See* Am. Compl. ¶¶ 35-37.

Thus, Defendants would be liable regardless of whether disseminating the DNC emails was the express and only purpose of the conspiracy, an explicitly agreed-upon part of a broader conspiracy (as Plaintiffs have alleged), or an overt act in furtherance of a broader conspiracy. Accordingly, acts in furtherance of the conspiracy are relevant to this Court's jurisdictional analysis, *see* Pls.' Mot. at 10 n.7, and Plaintiffs have at least cleared the relatively low bar for obtaining jurisdictional discovery. *See* Pls.' Mot. at 2-3; *Crane*, 814 F.2d at 760.[6]

### C. Plaintiffs' Allegations Concerning Defendant Stone Are At Least Sufficient to Support Jurisdictional Discovery

As to Mr. Stone, Plaintiffs rely primarily on a conspiracy theory of jurisdiction, where jurisdiction is based on overt acts in the District by Mr. Stone's co-conspirators, *see* Pls.' Mot. at 13-14, supplemented by Mr. Stone's own contacts with the forum (contacts which resolve any due process concern), *see* Am. Compl. ¶¶ 41, 216. Plaintiffs have pleaded specific facts from which the Court can plausibly conclude that Mr. Stone was part of the conspiracy (properly understood) or, at the very least, that Plaintiffs are entitled to jurisdictional discovery. Mr. Stone was a close advisor to Mr. Trump and the Campaign and remained so after leaving his official position. Am. Compl. ¶ 41. Mr. Stone was critical to bringing Mr. Manafort, who had extensive and ongoing ties with the Russian regime, on to the Campaign. *Id.* Mr. Stone had direct contact with both Russian intelligence and WikiLeaks during the campaign, and he had advanced

---

[6] Defendant's argument that there is nothing unlawful about *an agreement to collude with a hostile foreign power to interfere with a U.S. presidential election*, as long as that agreement did not explicitly contemplate the release of private information, is specious (and refuted by the ever-increasing number of criminal indictments arising from this campaign). Regardless of whether there are any lawful scenarios involving "an agreement to release emails to embarrass Secretary Clinton or the DNC," Campaign Opp'n at 9, such an agreement certainly *is* unlawful (and thus sufficient to support civil-conspiracy liability) when a political campaign accepts such support from a foreign national. *See* Pls.' Mot. at 10 n.7; 52 U.S.C. § 30121; 11 C.F.R. § 110.20.

5

knowledge of the timing of WikiLeaks' email dumps. *Id.* ¶¶ 162-164, 170-179. Taken together, these facts create a more-than-plausible inference that Mr. Stone was a party to the conspiracy.

## II. Plaintiffs' Motion for Jurisdictional Discovery Is Timely

No rule bars this Court from granting a motion for jurisdictional discovery filed after briefing or argument on a motion to dismiss. Rather, this Court has held that "[t]o get discovery, . . . one must ask for it . . . before the *resolution* of the motion to which the discovery would be relevant." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 2011 WL 13121428, at *6 (D.D.C. Aug. 10, 2011) (quotation omitted; emphasis added). Accordingly, Defendants' in-circuit cases deny requests for discovery made *after* an adverse dismissal order, *e.g.*, *id.*; *City of Moundridge v. Exxon Mobil Corp.*, 244 F.R.D. 10, 14-15 (D.D.C. 2007), or where the plaintiffs never requested discovery prior to appeal, *e.g.*, *Second Amendment Found.*, 274 F.3d at 525; *but see Edmond*, 949 F.2d at 417 (remanding for discovery where no request was made below).[7] Neither Defendant identifies any actual prejudice arising from the timing of Plaintiffs' motion. Accepting Defendants' argument would encourage inefficient litigation, forcing plaintiffs to file early, overly broad, and unnecessary discovery motions in response to every 12(b)(2) motion. Plaintiffs filed a targeted motion addressing the concerns raised at the May 17 hearing regarding the Defendants' contacts with the forum. That motion is now appropriately before this Court.

## III. Plaintiffs' Proposed Jurisdictional Discovery Is Focused and Reasonable

Plaintiffs have proposed jurisdictional discovery narrowly targeting evidence of "Relevant Forum Contacts," which they have carefully defined. Pls.' Mot. at 15-18. Mr. Stone

---

[7] The Campaign's out-of-circuit cases are neither binding nor persuasive, as Defendants have identified no prejudice or substantive insufficiency with Plaintiffs' motion. Defendant's selective quotations notwithstanding, each of those cases rejected discovery on grounds other than timing. Campaign Opp'n at 3-5; *e.g.*, *Kelly v. Syria Petro. Dev. B.V.*, 213 F.3d 841, 850, 855 (5th Cir. 2000) (no discovery where plaintiffs did not diligently seek discovery after Rule 26 conference).

largely accedes to Plaintiffs' proposals (except for those concerning depositions); the Campaign asserts it is not subject to any discovery, as to jurisdiction or the merits. Each of its reasons fails.

(1) The Campaign's argument that no discovery should be granted regarding contacts occurring after July 22, 2016 is wrong for at least three reasons. *First*, the July 22 email dump did *not* mark the end of the conspiracy to interfere with the election or the harm to Plaintiffs. The conspiracy included using the emails to harm candidate Clinton and her supporters, which the Defendants continued to do every time they called public attention to the emails through Election Day 2016, driving home the message that support and advocacy for Secretary Clinton could result in loss of privacy and exposure to identity theft—and causing these very injuries to the Plaintiffs. *See* Am. Compl. ¶ 168. *Second*, due process and the "arises from" standard do not require a showing that Defendants' forum contacts *caused* Plaintiffs' injuries. The relevant standard is a "discernible relationship." *See* Pls.' Mot. at 7-8. *Third*, under the conspiracy-payoff theory discussed in Plaintiffs' motion, post-July 22, 2016 conduct was sufficiently related to Plaintiffs' claims to create a further basis for jurisdiction. *Id*. at 11 n.9.

(2) The Campaign has no legal support for the novel assertion that its communications are non-discoverable unless made between two or more conspirators. Under that absurd and incorrect theory, a Campaign document entitled "*Memo to File: Remember to Schedule Next Email Conspiracy Meeting at the Trump Washington D.C. Hotel*" would be non-discoverable.

(3) The Campaign also has no authority for its claim that internal communications are entirely exempt from civil discovery based on an absolute First Amendment privilege. Campaign Opp'n at 13. *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), held no such thing. Instead, the Ninth Circuit engaged in a multipart interest-balancing test that the Campaign doesn't even try to describe, let alone satisfy. *See id.* at 1159–65. In any event, discovery can be

made subject to a protective order, thus "ameliorat[ing]" any claimed "harms of disclosure." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1178 (9th Cir. 2011) (discussing *Perry*).

(4) The Campaign asserts that Plaintiffs have identified "no reason to believe" that any Campaign person said anything about the emails at the March 31 and April 27, 2016 meetings. Campaign Opp'n at 13. Actually, the plaintiffs have alleged facts suggesting that there is good reason to believe the emails were discussed. Pls.' Mot. at 9-11. Moreover, those discussions could have furthered the conspiracy's objectives even if the emails weren't specifically mentioned. *Id. at* 10-11. In any event, this discovery does not aim definitively to prove the conspiracy, only to locate the conduct that later will be proved to have constituted it. *See, e.g.*, *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 142 (D.D.C. 2004).

(5) Defendants seek to prematurely litigate whether depositions of high-ranking Executive-branch officials would violate the separation of powers or "greatly impede the Special Counsel's work." Campaign Opp'n at 13-14; Stone Opp'n at 6-9. The need for depositions will be determined by document discovery; and if Plaintiffs later seek to depose any high-ranking Executive-branch officials, the scope and propriety of those requests can be resolved in response to objections or protective motions. And if the Special Counsel indicates that discovery threatens to interfere with his investigation, that issue also can be addressed at that time.

(6) As other exchanges with the Court make clear, *see, e.g.*, 5/17/18 Tr. at 7-8, Plaintiffs did not disclaim reliance on the in-forum acts of Defendants' co-conspirator (Campaign Opp'n at 14), but merely pointed out that the Campaign had its own contacts with the forum in furtherance of the conspiracy. Discovery regarding Defendants' co-conspirators' contacts with D.C. is appropriate.

Date: June 4, 2018

Respectfully submitted,

By: /s/ *Benjamin L. Berwick*

*Counsel for Plaintiffs*

BENJAMIN L. BERWICK
(D.D.C. Bar No. MA0004)
United to Protect Democracy
10 Ware St.
Cambridge, MA 02138
(909) 326-2911
Ben.Berwick@protectdemocracy.org

IAN BASSIN
(NY Attorney Reg. No. 4683439)
United to Protect Democracy
222 Broadway
19th Floor
New York, NY 10038
(202) 856-9191
Ian.Bassin@protectdemocracy.org

RICHARD PRIMUS
(D.C. Bar No. 472223)
The University of Michigan Law School*
625 S. State Street
Ann Arbor, MI 48109
(734) 647-5543
PrimusLaw1859@gmail.com
*\* For identification purposes*

JUSTIN FLORENCE
(D.C. Bar No. 988953)
ANNE TINDALL
(D.C. Bar. No. 494607)
United to Protect Democracy
2020 Pennsylvania Ave. NW, #163
Washington, DC 20006
(202) 856-9191
Justin.Florence@protectdemocracy.org
Anne.Tindall@protectdemocracy.org

STEVEN A. HIRSCH
(CA Bar No. 171825)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400
shirsch@keker.com

NANCY GERTNER
(MA Bar No. 190140)
Fick & Marx
100 Franklin Street, 7th floor
Boston, MA 02110
(857) 321-8360
ngertner@fickmarx.com

STEPHEN P. BERZON
(CA Bar No. 46540)
BARBARA J. CHISHOLM
(CA Bar No. 224656)
DANIELLE LEONARD
(CA Bar No. 218201)
Altshuler Berzon LLP
177 Post Street Suite 300
San Francisco, CA
(415)421-7151
sberzon@altber.com
bchisholm@altber.com
dleonard@altber.com